This is an emergency information and safety announcement. I would like to inform the staff that we have a special incident tonight. We would like to make you responsible for the upcoming study. Thank you. You may be seated. This next case up is 4090438 State of Illinois CMS v. State of Illinois Labor Relations Board and lots of others. It's 4090438 for the appellants as Lawrence J. Weiner. You are here sir? For the appellees Melissa Auerbach and John Schmidt. Are you dividing this up? Yes sir. And you've already talked to the clerk about it? We have. Okay. Mr. Weiner you may proceed sir. Thank you your honor. It took you a while to get in here. It took you a while to get in here. We had to wait for you to get in here so we could begin. I'm sorry your honor. I was here actually. I was waiting for my client. May it please the court. I apologize to your honor. I didn't intend to do that. First of all I have another apology to make. I noticed that my brief had certain acronyms in it. It was a quote from the brief of counsel representing CMS. CMS counsel before the court of the board. So I wanted to advise the court. I think most of them were covered later in the brief. There's the JCHO, Joint Commission on Accreditation of Healthcare Organizations and TMPHC which related to the Tinley Park Mental Health Center. And then there's a TDF which relates to the Treatment and Detention Facility. So I just wanted to clarify that for the court. I apologize. I quoted that without putting a footnote in indicating what those were. This as you know is one of about a dozen cases with another six cases coming before this court relating to the representation issues regarding public employees for the state of Illinois. This is the first case though that deals with the title, the managerial title, the highest in the state of SPSA. And the unions now represent close to 97% of all of the state. About 3% are left. And what's happening here is that this has created really an organizational and operational issue for the state in terms of who's going to manage, who's going to supervise the 97% almost of other employees. So this as I say is the first... Are you telling this because this is a self-inflicted wound by the state of Illinois upon itself? What do you expect us to do about it, counsel? Well, I think that, I think what's necessary is that obviously the law has to be applied. And this court is obviously about to follow the law. The question is to each of these individual cases, some of which involve, this case involves 14 SPSAs. But you're going to have a case coming up that about 1,200, not SPSAs, but PSA optional ones that's coming up. Are you sure it's this district? I only filed before this district, Your Honor. Okay. I like coming down to this beautiful courtroom in which it is. Always a pleasure to see you, Mr. Weiner. It's always, it really is a pleasure. Whatever happens, happens. As you know, I've been doing this 45 years and I'm enjoying every moment of it and I especially enjoy coming down here. But in any event, obviously the determinations have been overwhelmingly, if not almost exclusively in favor of raising Your Honor's issue, obviously got dealt with. Who was appointed and when, et cetera, et cetera, to the board. But I'm not going to get into the political aspects of this. We have what we have and that is in this case we have a decision which we truly believe was erroneous, clearly erroneously decided. And in this case, this is also an aberrational case, in that we were allowed a hearing. In almost all of the other cases coming before you, there's no hearing at all. It's just a letter, there's an ALG appointed, asks for position statements, reads the position statement, automatically issues a ruling that there's no issues of fact or law and then there's an automatic majority interest petition and there's an automatic certification and there's no hearings provided. In this case fortunately we have a hearing. The problem with the decision in this case is that it's really the board and the ALJ were engaged in what I would call a legal or logistical fallacy based upon false premises. And I'll go into that with you. I hope in my limited time I have I will give you some very significant examples of what I'm talking about. But obviously we all know that if you accept a premise, then the premise determines the application of the facts and then if you  have a false premise, it comes down to a false conclusion. Even though the logic is perfect. And when you read the ALJ's opinion in this case, when you read the board's opinion in this case, you realize that they have a number of false premises upon which their entire decisions are based. For example, the board in Appendix 6 says, as to the employer's managerial by law contention, the ALJ likewise determined it without merit, finding that the pharmacy directors do not act on behalf of an officeholder analogous to the manner in which the assistant state's attorneys and assistant public defenders act on behalf of, respectively, state's attorneys and public defenders, nor, she concluded, do pharmacy directors possess the discretion of assistant state's attorneys or assistant public defenders. Although the ALJ's reasoning and result are correct, we find the managerial by law exclusion is simply inapplicable to the instant case. Period. It's inapplicable. If you buy that, obviously you buy that we haven't satisfied the standard. The ALJ, which was the adopter, found even less. The ALJ found that since they weren't subordinate to anybody, the managerial exception did not apply. Simply because they had no higher official. That's the point. The point is that these people, statutorily, are totally and completely in charge of the operation of these massive pharmacies which serve all the mental health centers, serve the Department of Correction Institutions. These are huge organizations involving substantial medication for everybody in the developmental centers, in the mental health centers, in the corrections department. All these people that are served by the state, they get their meds through these pharmacies. And there's only a few of them. There's like 14 of them. Well, actually, there's like 10 or 11 of them. And they're run by these people autonomously. Apparently two of the 16 were agreed as being management people and not subject to this proceeding? Correct. There were two that were the director of the manager of the Bureau of Pharmacy, a guy by the name of Randy Mallet. And Brad and Phil Mahalik was the deputy director. For some reason, they included the other deputy director, this Coakley, that's K-O-E-C-H-L-E, but it's Coakley. They included this other deputy pharmacy director, which has all sorts of statutory and actual involvement in personnel decisions, budgets. I mean, the record is primarily undisputed as to what these people do. So, but more importantly, let's go to the statute. I mean, the statute... Well, where did the ALJ go wrong in your judgment in analyzing this case and record and concluding that these people were not management and could be become part of the union? Well, the first part is that both the ALJ and the board, which adopted the U.N. Bill of Rights, completely ignored the statute. In the state's attorney's case, in the public defender's cases, they didn't even hold a hearing. They ruled as a matter of law because of the statute that they were vested with managerial and executive functions and duties and responsibilities. That is exactly our case. So you just can't say, well, the statute's not applicable because you don't have us. You don't have someone over you that you are acting as a surrogate for. It's even more compelling in our case to not have anybody over them because they function independently and autonomously. And they function on behalf of the department. And they function so, hey, hey, a manager by law, they function so because the law which is set forth in detail in all the briefs actually, specifically require them to do this. How can you ignore the statute which vests these people with responsibilities? And the administrative law judge does another little sophistry. He says, well, gee, there's no specific application in the law to the pharmacy in charge law to the Department of Health and Human Services, DHS. Not true. There is a specific reference to pharmacists in charge and the DHS under the rules and regulations, which we say. The second argument we have is on a traditional basis. And that's what Your Honor is asking about. And here there are a number, just an overwhelming number of false assumptions, false predicates and premises that result in obviously, logically, but result in a false and incorrect, clearly erroneous determination. Number one, the primary one is that both the ALJ and the Board state it is the, one of the primary reasons they exclude these people is they found that it is, quote, it is the final responsibility and independent authority to establish and effectuate policy that determines managerial status under the act. Final, that word final. That's not true. That's not the law. The law is anything but having the being final determination. In fact, if that were the case, you'd probably only get the secretaries of the departments if they have the last initial higher up on the chain it goes. They'd be the only ones excluded. Maybe only the governor. I don't know. But the point is that that was just a false premise. But of course, once you come to that premise, yeah, they pass up things. Things go up the chain. But they don't have to have the final authority at all. You know, and the law is just simply we quote the law in our brief. And it specifically, with respect, this is on page 34 of the agreement, specifically regarding the second prong of the test. The prong requires only that the employee have effective recommendation or control rather than the final authority over employer policy. And we say to Claudia Cook, chief judge, our Supreme Court, okay, our Supreme Court says it doesn't have to be the final authority. And yet they hold that's because they don't have the final authority, therefore they're not managers under the traditional test. It's just a false premise with a false, with total logic but a false conclusion. Same thing with respect to Mr. Coakley. I mean, they said he has no final responsibility or authority to establish or effectuate policy for the Bureau. He doesn't have to have that. He's involved in everything. Involved in supervising four of these other parties. So his final responsibility, which you believe is the key thing? Well, no. I mean, there are other findings that they misapply and they're set forth specifically in our brief as to what the ALJ and the ILRB said and why that is not in conformance with court law. And even it's not in compliance, a lot of these are not in compliance with prior board law. I mean, you know, it's just that they're fabricating these straw men and then, of course, they logically attack it. Same thing with the supervisory issues. Well, let me ask you this question. You describe these pharmacies, I guess, and prisons and what are the other facilities? Medical health centers, developmental centers, everything around, you know, the DHS. I mean, we supply, as you know, thousands and thousands of people are served by the state. So let's assume a prison pharmacy where there might be a few thousand inmates and the prison pharmacy is responsible for the prescriptions of drugs that are being, pharmaceutical drugs that are coming through there. Right. One of these people is the guy in charge of the prison pharmacy? Let's take DHS. Let's take the mental health center. Mental health center. I think most of them are under DHS mental health centers. Okay. And developmental centers too. If we were to agree with the board, would there be anyone in your description in a managerial position at that facility? No. At the pharmacy? No. Nobody. So what does the board say as far as to explain this? So who's in charge? The director of DHS? No. Who's the manager? Well, ordinarily... It seems to me there ought to be somebody in management. Who is it? Well, you know, the guy Mahalik, he's the deputy pharmacy director and one of the two and he supervises ten of the people and then the other guy, this Coakley, who they included, supervises four others. But they're not on premises. I assume they're here in Springfield. I don't know. I don't know where they are. But I mean, they're not at the pharmacy. And the pharmacies operate actually autonomously. The evidence doesn't show that there's close supervision or monitoring these people. They run the show. And they run the show statutorily, Your Honor. Statutorily. If you look at pages 5 and 6 of our brief, it says statutory definition of the pharmacist in charge and it gives specifically the responsibilities of the pharmacist in charge shall include supervision of all the activities of all employees as they relate to the practice of pharmacy. Establishment and supervision of the method and manner for storage, dispensing, safekeeping of pharmaceuticals in all areas of the institution or facility, including main security, etc. Establishment and supervision of record-keeping systems. The development and implementation of a procedure to be utilized in the event of a drug recall. Establishment of the procurement of all the drugs that will be dispensed by the supervisor. I mean, there's all these specific statutory obligations that the court says they're not applicable. They're not applicable. I don't know why they're not applicable. It's much more detailed than the state's attorneys and than the public defenders. I mean, it's specifically in the statute. And there is a provision that ties this in to DHS. So, I don't know if my time is up. The same thing with respect to the supervision. It's not just a mischaracterization of the evidence, which also took place, or a slanting of it or an emphasis on certain things. But I mean, all these people supervise a number of people. Mr. Coakley, as I said, supervises four of the PDs, pharmacy directors to avoid acronyms, and pharmacists in charge. And again, there's just a misapplication of the law because there's an implication that they have to make these final decisions here also have to be supervisory. They only go into like three of the 11 categories. You only have to qualify in one category. And all of them do that based upon the evidence. And there's a complete mischaracterization of the law by administrators. Well, I judge it that way. Well, going to section 3-1 of 3.1 of the 3i of the Pharmacy Act, defines a pharmacist in charge as a licensed pharmacist whose name appears on the pharmacy license and who is responsible for all aspects of the operation related to the practice of pharmacy. Did the board conclude that somehow that didn't include supervision of the other people who were working there? The board concluded, the primary reason they concluded that they weren't supervising was, is that some of their decisions had to go up and be reviewed by Mahalik and by Colchi and by Kakely. But that's, it doesn't have to be, the law is clear, it doesn't have to be a rubber stamp. And there can be disagreements. In one instance, they recommended a raise and they said, well, for 4% and they only got a 2% raise. And the ALJ and the board didn't adopt the recommendation. Your time's up, Mr. Weiner. You have an opportunity to address this again. Thank you, counsel. Mr. Schmidt. Thank you, your honor, and may it please the court. I'm John Schmidt and I'm an assistant attorney general who represents the labor board. In this case, I'll be dividing time with Ms. Auerbach, who represents AFSCME. I was planning to address the managerial issues and she was going to address the term appointment issue that's in this case. And this court, I think, in its CMS decision involving Department of Human Services staff attorneys, recognized the two tests that are applicable in determining whether an employee is managerial. The first test being whether the employee is managerial as a matter of law. And what this court, and of course there are two cases where employees have been held managerial as a matter of law. And those are cases involving assistant state attorneys and assistant public defenders. I believe this court in the CMS case really went to the heart of what those decisions are about, which is that you have a unique situation where because of case law, the assistants in those offices had the power and the authority to act as surrogates for the person in charge of the entire office, the state's attorney or the public defender. We don't have that here. Well, Mr. Schmidt, I don't know about being a pharmacist, but I know a lot about being an assistant state attorney. I was one for a long time. And I can tell you that the notion of unfettered discretion was something that certainly escaped me during my tenure as an assistant state attorney. And from Mr. Weiner's description of the job of what these pharmacists in charge were doing, it seems to me that they had rather more authority, more managerial authority, more supervisory authority than I ever possessed or my colleagues possessed as assistant state attorneys. I think Your Honor is speaking from a practical standpoint. Well, isn't that what we're supposed to be doing as we apply and interpret statutory provisions? I think what the Supreme Court did was in the two cases where they applied the managerial as a matter of law exception is say because of this statutory authority we're not even going to look at how those offices operate because these individuals have the statutory power to act as surrogates for these public officials. As a matter of practicality, Your Honor is probably right. I have the authority to act as a surrogate for Attorney General Madigan. However, as a practical matter, Your Honor is correct. In many instances if I went too far or spoke out of turn, I would get in serious trouble. Well, going to the section that Mr. Weiner mentioned, Section 3I of the Pharmacy Act, pharmacists in charge, licensed pharmacists, their name appears on the pharmacy license, and who is responsible for all aspects of the operation related to the practice of pharmacy. Now, I'm assuming the operation means more than just his practicing pharmacy. Doesn't it seem like it suggests the operation in situ? That is, the operation at the mental health clinic of the pharmacy that he's in charge of? I think that is what the statute's intended to say, Your Honor. And if that guy isn't the supervisor and the manager, who is? Is there no one? Well, first of all, we're talking about, for purposes of this statute, whether these individuals will be supervisors or managers under the tests set forth in this statute. And what the Board concluded is these pharmacy directors are not because they don't meet those particular tests. And the reason that they did not meet the managerial... How about my question? If they're not the supervisor and manager, who is? Well, for purposes of the tests, the managers would be Mr. Malin and Mr. Mahalik. Sitting in Springfield? Yes, but... Doesn't that strike you as a bit of a stretch? I mean, if we've got an operation with ten pharmacists working under one of these guys off in some... Tinley Park. Tinley Park. Okay. About 200 miles away from Springfield. Not quite. Isn't the guy in Tinley Park? You know, if I were a legislator reading this language, I'd think, my God, he's the pharmacist in charge. He's the guy who runs it. As the record in this case showed, though, Your Honor, it's the guy in Springfield who's developing a procedure and policy manual that is setting forth the important policies and procedures that must be followed at all these pharmacies. And these pharmacy directors do... So I'm a Cook County State's Attorney in my plush office on the third floor of the Daly Center, and I've got an office of about 250 prosecutors at 26th Street. But I'm the manager, because I'm the State's Attorney, and I just set forth the policies. And whoever these folks are and whatever they're doing, they just work for me. Well, at 26th Street, and that's a lot closer than Springfield to Tinley Park, but somehow the Supreme Court said no, no, no. Those people are supervisors and managers and they exercise control. Well, they said because those particular statutes make them, give them, vest them with the authority of the State's Attorney. Actually, there is no statute which speaks as clearly as the one I just quoted you about, the authority of Assistant State's Attorneys. There's no statute that addressed my roles as Assistant State's Attorney that spoke of my being responsible for all aspects of the operation related to the practice of law under me. But there's also no statute that says pharmacy directors may act as surrogates for any particular higher-up in the Department of Human Services or in the Bureau of Pharmacy. I'm not sure it's a higher-up. How about just the guy in charge? The guy in charge in Tinley Park isn't in charge? He's not the manager or supervisor in Tinley Park? He's the highest up in the department. But he's not a manager or supervisor within the meaning of the Illinois Labor Law? Within the Illinois, that's correct. How did we get to that point? I mean, at some point, don't these definitions have to kind of make common sense, Mr. Schmidt? Sure they do, but one purpose of this Act is to recognize that employees generally have a right to participate in collective bargaining. And I think this court and other courts have agreed the exceptions to that ought to be construed narrowly. And I think this court's recent CMS decision is consistent with that. Well, maybe we weren't right in CMS. Maybe if that's the slippery slope leading to ridiculous results like possibly this case. No, I don't think that's ridiculous results at all because I think what, in terms of practicality, one thing we have to go back to is the purpose of having these exclusions. If we have to agree with you, then there is we have to say no one's in charge in Tinley Park? Isn't that essentially what we'd have to conclude? We have no laws at Tinley Park. No, I don't think that's what you have to conclude at all. Doesn't it mean that you recognize layers of management with increasing managerial responsibilities? Yes, it does mean that. And that under the test set forth in the Act, it's probably only going to exclude those in the top layers, those who are really effectively making the policies and who are making the important decisions, people like Mr. Mahalik and Mr. Malin. There's no question that they were they would have been considered policy makers. These individuals, the pharmacy directors and Mr. Coakley, they had some significant input into policy, but they did not have final authority. And this court CMS case does also mention final authority over policy as being determinative. That doesn't always mean you have to be at the top of the hierarchy. How do we reconcile that with what the Supreme Court said in the Cook County State's Attorney's case? I mean, no assistant state's attorney is final control over policies. Not a one. And this is by a Supreme Court that understood this and several of those were people who have been in the state's attorney's office themselves. Your Honor, my time is up and I'm going to assume you want to answer the question. Your Honor, I think that what this court should do is recognize and the Supreme Court said in the two cases, in the assistant public defender case, Chief Judge, and in the assistant state's attorneys that they were carving out a narrow exception. And I think in other circumstances the Supreme Court would want it's consistent with the Supreme Court's decision to recognize that as a narrow exception. The Supreme Court says it should not be construed broadly. And I think that those decisions should be limited to cases where you do have a surrogate situation which is not present. Thank you, Your Honor. I'd like to follow briefly on the managerial issues. The statute here, the Pharmacy Practice Act, pharmacist in charge provision, applies to private sector pharmacies such as Walgreens and CVS. So the fact that someone is a pharmacist in charge doesn't mean you have any broad discretion to act on behalf of the state. It's a regulatory provision. You have responsibility not necessarily. On behalf of the states because you have private pharmacists. So the managerial is a matter of law, assistant state's attorney and public defenders. It hasn't been extended by the Supreme Court outside of those limited attorney exceptions. Who's in charge in Tinley Park? What does that mean? Is there no boss up there? The Pharmacy Bureau has space in each of these different facilities to provide pharmacy services at these different facilities where there is a director running the facility. It's not a Salem Pharmacy. Most of them are in these different facilities where there is management in the facility. And then they're performing pharmacy services under the supervision remotely of people in Springfield. And there are multiple layers in Springfield. There's the bureau chief and then there's the manager. So no one's in charge in situ? There are people in charge but not that would exclude them under the Labor Act definition which is intended to have very, very narrow exclusions. You could have, I mean the board and the courts have found attending physicians to have the right to be in unions. The attending physician might be the only one in charge in an emergency room at a given time and still have the right to be in a bargaining unit. It doesn't necessarily have to be for the labor law purposes somebody on site in charge as opposed to everyday parlance this is a supervisor and manager. But not the way the legislature wrote this law to have very extreme narrow exclusions. You have multiple layers above these people even if they're not on site. You could have an assistant nursing director in a nursing home in charge on site and be the only one at a time and still have the right to bargain if under private sector or if it's public sector that person doesn't make the labor law definition. So I don't think it's necessary to have the supervision on site. The evidence showed that Malick centrally has these policy and procedures manuals and the pharmacists in charge at the different facilities have very limited discretion to adapt those to their own and even if they do it has to be at least as stringent as centralized policies and has to be approved. Other than your explanation that the Supreme Court said the state's 30 cases is a narrow one, what's the distinction between that and here? The courts have recognized distinctions. The Chief Judge of the 18th Circuit in the probation officer case approved by the 2nd District. The same argument was made there of the Chief Judge that there were all these statutory provisions that the probation officers had to do on behalf of the court system and that that made them managerial as a matter of law and it was found that that didn't apply to the fact that there are statutory provisions. It just hasn't been extended outside of the assistant state's attorneys and public defenders and maybe the Supreme Court viewed that as these people are acting as officers of the court on behalf of the state. I think there was some of that probably underlying it and it wasn't intended and hasn't been found to apply to outside. I mean these are pharmacists, they're professionals, the act's definition of professional employee is they have broad discretion and independent judgment as professionals and so they exercise that as pharmacists. But I mean the fact that Coakley, although counsel makes an issue of Coakley because he's Assistant Bureau Chief, the record shows he spends 60% of his time on Medicare paperwork administrative duties. He's not spending most of his time managing and he's sitting in Springfield in the same office as Mallon whom he reports to. And one of the people that they claim is a supervisor, Billingsley, said he spends 75 to 80% of his time doing general pharmacy work the same as the pharmacists and the technicians, filling cassettes and counting medicines and making sure that everything's accurate. And Barger, one of the other five that are claimed to be supervisory,  and otherwise he's doing other work similar or participating in facility-wide committees to give the pharmacists input as to medication review for patients or things such as that. Counsel said that the board only focused on a few of the going to supervisory issues but that's because that's what the employer argued. The employer only itself focused on rewarding, directing, disciplining, and even with respect to those, only argued that Coakley rewards because he recommended bonuses for four people and one of them got it. That two of the employees, Rapp and Manduricina, have disciplined because they gave warnings pursuant to these established affirmative attendance policies or issued a discharge when there's no showing who made the discharge decision and that it wasn't through several layers above them. And that they adjust grievances because one of the five at the first step explained to the union why he had to hire somebody temporarily and that worked it out. So the fact is that there's very narrow supervisory definition and it's a matter of record and it's a matter of fact and the board found that it wasn't shown that the employees exercised the supervisory discretion. And with respect to managerial, it's a very, I mean the acts definition which applies where it hasn't been extended outside the narrow state's attorney type cases is that you have to be at the highest levels broadly affecting the department's goals and affecting implementation of that and that wasn't shown here that these people are broadly engaged in ability to change the goals and develop policies and charged with implementing those policies. They're charged with making sure that things run smoothly, that there aren't errors in the distribution of medication, that they may have minor ability to decide how, whether there's going to be a cabinet or what's going to be used to distribute medication outside of hours when the pharmacists aren't there at night so that the nurses can get access if they needed, minor things like that, but not broad issues of how the pharmacists are run, how many pharmacists are there, how many technicians are there, you know, they don't have discretion to determine any of those, they're not in charge of hiring, they're not in charge of laying off, deciding how the pharmacies are staffed, but rather just overseeing the professional carrying out of pharmacy duties in the various facilities. And the fact that the pharmacies are subject to the centralized policies makes them professional pharmacists you know, leading, maybe leading the work of the pharmacies and these individual patients. Why were two people cut out of this request? The record doesn't show that, it just says that the parties agreed, CMS and Union had agreed before the start of the hearing that those two would be excluded. How did they differ from the people who are still before us? Well, one in Malin is the Bureau Chief, so he's the top person. So the Bureau Chief was part initially of this request? Well, no, I think it was agreed, the petition was, the Bureau Chief and Malik are both in the title SPSA AP, and so that title was positioned for it, but from the start the parties agreed that the Bureau Chief and then Malik who oversees all of the pharmacies at all the individual facilities. The very title that these people hold, give us any pause in concluding that they're not managerial agents? I mean, under the statute the title doesn't matter, it's the job duties that matter. It might be reflected from where they are. There's no evidence that the titles were created with the labor statute in mind as opposed to for other reasons. Thank you. Thank you, counsel. Mr. Meiner, any rebuttals, sir? I think your Honor hit the nail on the head. This is a slippery slope. The Act also provides specifically for supervisors, specifically for managers, under both those tests, and I think that that is exactly what should be enforced here. It's interesting that their argument today is that it only should be restricted to the highest levels. Well, first of all, this is the highest level, SPSA, but second of all, in salaried employees, the court held, managerial status is not limited to those at the very highest levels of the governmental entity. Which court said that? Salaried employees. That's the First District here. At 202 Illinois, appellate third, 1013 at 1020. It is enough that if the functions performed by the employee sufficiently align him or her with management such that the employee should not be in a position that creates divided loyalties. And that's what's going to happen here. There is going to be no, there's going to be only bargaining unit employees at these huge facilities. There's going to be no managerial people at any of these facilities at all. The authority to make... Well, even if that's true, these are facilities at the State of Illinois, aren't they? Of course. And the legislature has propagated all this stuff, is responsible for that as a matter of policy, isn't it? Of course. So if they've decided they don't want any managers, everyone's going to be an employee, why should we stop them? Well, the State of Illinois didn't say that. The State of Illinois passed a statute that gave these people, and let me just put this to rest, that statute, since it's been brought up now by counsel twice, is the Illinois Administrative Code and has provisions stating that those provisions are applicable to inter alia pharmacies quote, operated by the Department of Human Services. That's Title 68 Section 1330. Further Administrative Code provision relied upon narrowly focuses on the specific duties of the pharmacist in charge. These are the people in charge by statute and by function. Well, you heard, I think it was Mr. Schmidt or Ms. Auerbach, I can't remember which one, who said, wait a minute, that deals with general pharmacy provision, that's not necessarily the one that concerns state pharmacies. Well, it says DHS, it says that they're operated by the Department of Human Services. These are the pharmacies operated by the Department of Human Services. That's what this case is. APs. DHS APs. So, where did the board go wrong? What did they do that caused them to reach the wrong decision here, in your judgment? Well, I think what they've done here is very I don't want to be disparaging in the sense, but Go ahead, just us folks. Disparaging. I think it's intellectually dishonest, Your Honor. I think what they did here was try and extend the law by extending it one more, adding the word final to the effective recommendation or establishment of policy. They have to be final on that. That's just not, it's not, it's just an extension of the law. It's a minimization of the facts in support of people being managers and supervisors, and a maximization, an extension, it's an improper extension of the law. There's going to be nobody left. There's 97% of them. There's going to be nobody left to manage in this state. The state didn't intend that. Certainly not in the pharmaceutical area. The state has intent? I'm sorry, Your Honor. The state has intent? That's a different issue. I'm not prepared to answer that. I'd like to file a supplemental. Thank you, Castle.